IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| In the matter of: | ) | NO. 10 B 43794 |
| Jacqueline Scott | ) | |
| | ) | JUDGE A. Benjamin Goldgar |
| | ) | |
| | ) | |
| | ) | |
| Debtor, | ) | Chapter 7 |
| | ) | |

<u>DEBTOR'S REPLY TO BEST CAPITAL SERVICES LLC'S/SHAWN RICE'S
MEMORANDUM IN OPPOSITION</u>

I.   **Background**

Jacqueline Scott, (the "Debtor") filed Chapter 7 on September 30, 2010. The Debtor's case was discharged on February 8, 2021. On March 27, 2019, the Debtor's case was reopened to administer her pre-petition lawsuit. The Debtor's highest level of completed education is high school. The Debtor is currently unable to work due to her pre-petition injury and is collecting social security disability of approximately $1,300.00 per month.

On April 5, 2021, the Chapter 7 Trustee filed a report of a deposit of unclaimed funds for $99,665.66 which resulted in a surplus from the Debtor's pre-petition personal injury lawsuit which was an asset from her Chapter 7.

The Debtor alleges the following: Sometime around early June 2021, an individual named Shawn Rice from Best Capital Services LLC ("Mr. Rice") reached

1

out to the Debtor via telephone to discuss her surplus. They spoke several times. Mr. Rice told the Debtor that he was an attorney from a locater company, that the only way she could obtain her surplus from the Bankruptcy Court was with an attorney, and that it was not possible for her to obtain the surplus herself. Mr. Rice failed to explain to the Debtor that not only could she obtain the surplus herself for free, but there also was a bankruptcy help desk available which could assist the Debtor in obtaining the surplus. Mr. Rice and the Debtor never met in person. The Debtor put Mr. Rice in her phone under the name "Shawn/Attorney."

On June 9, 2021, the Debtor signed a contract and power of attorney with Mr. Rice to authorize him to obtain her surplus at a charge of 25%, a fee of $24,916.41 to Mr. Rice from the surplus. Shortly thereafter, the Debtor called the Bankruptcy Court and inquired about her surplus. She was told she could file the application on her own. On June 24, 2021, Mr. Rice filed an application for payment of the unclaimed funds which was denied on June 28, 2021, for improper service. The Debtor filed an application for payment of the unclaimed funds on June 30, 2021. Mr. Rice refiled his application on July 1, 2021. Mr. Rice filed a response to the Debtor's application on August 2, 2021, arguing that he had a signed contract and thus is entitled to the $24,916.41.

## II.     The contract is invalid under the defense of unconscionability.

Illinois courts will allow a contract to be voided under the defense of either "procedural" or "substantive" unconscionability. *Crown Mortg. Co. v. Young*, 2013 IL App (1st) 122363, 371 Ill. Dec. 31, 989 N.E. 2d 621, 624 ("*Crown*") (citations

2

omitted). Procedural unconscionability is present when "a term is so difficult to find, read, or understand that the [party] cannot fairly be said to have been aware [she] was agreeing to it, and also takes into account a lack of bargaining power." *Id.* Substantive unconscionability is present when the terms of a contract are "inordinately one-sided in one party's favor." *Id.* Illinois law does *not* require a finding of both procedural and substantive unconscionability to invalidate a contract. However, a finding of both does make the finding of unconscionability more likely. *Id.* In the instant case, both procedural and substantive unconscionability are present.

There are two Illinois appellate cases with almost identical facts which are instructive. The first case, *Crown*, involved a surplus of $14,000.00 from a 2004 mortgage foreclosure case. *Crown, supra,* 989 N.E. 2d at 623. In 2012, a locater company entered into a contract with the foreclosed homeowner for 50% of the surplus as its fee, for a total of $7,000. *Id.* The court voided the locater's contract as being procedurally and substantively unconscionable. *Id.* at 624-5. It found the contract procedurally unconscionable because "there was an obvious inequality in the parties' abilities to understand the transaction at hand" because the homeowner: (1) thought the locater company was acting as her attorney; (2) "had no knowledge of the simple procedures required to obtain the surplus" on her own; and (3) there was a vast discrepancy of bargaining power between her and the locater since the homeowner had limited financial resources and education. *Id.* at 623-4. *Crown* also found substantive unconscionability, as well, on the basis that

3

paying a locater company $7,000.00 for something the homeowner could have done herself for free was evidence of a "gaping cost-price disparity." *Id.* at 624.

The second instructive case is *Wash. Mut. Bank, FA v. Swierk*, 2015 IL App (1st) 140639-U at *2. ("*Swierk*"). *Swierk* involved a surplus of $29,616.25 from a 2005 mortgage foreclosure case. In 2013, an attorney acting as a locater entered into a contract with the foreclosed homeowner to be paid 25% of the surplus he obtained as his fee, for a total of around $7,404.00. *Id.* at 2-3. The court held the contract to be unconscionable and reduced the fee to $1,000.00. *Id.* at *25. The *Swierk* court found the contract to be unconscionable because: (1) the attorney locater failed to properly inform the homeowner how he easily could apply for the surplus on his own or through the help desk free of charge; (2) a fee of $7,404.00 for the minimal work of filing an application for a surplus which was non-disputed and an open and shut case is inherently unconscionable; and (3) the homeowner was an unsophisticated consumer with a limited education. *Id.* at *13-24. While *Swierk* did involve an attorney-client relationship, the court found the principals of the *Crown* case applicable. *Id.* at *24. ("However. while the facts in *Crown Mortgage* may not be the same as those in the instant case, its reasoning and, in particular, its matter-of-fact special concurrence, are directly on point.") .

In the instant case, there is procedural unconscionability. Like the homeowners in *Crown* and *Swierk*, the Debtor was not informed and lacked the knowledge that she could proceed to obtain the surplus for free on her own or through the bankruptcy help desk. Even worse, Mr. Rice allegedly lied to the Debtor when he

4

told her that he was an attorney, that the Debtor *could not* file to obtain the surplus on her own, and that she could only use an attorney. Obviously, the Debtor is more than capable of filing the application on her own and she has done so with this Court. *See* Bankruptcy Docket #47. Moreover, similar to the foreclosed homeowners in the *Crown* and *Swierk* cases, the Debtor here also is an unsophisticated consumer with limited education and financial means. The Debtor's highest level of education completed is only high school and she is receiving social security disability of only $1,300.00 per month. Mr. Rice preyed on the Debtor and took advantage of her situation, resulting in an obvious inequality and discrepancy in bargaining power between the parties. Thus, the facts of the case exhibit procedural unconscionability.

There is also substantive unconscionability present in the instant case. Like the *Crown* and *Swierk* cases, the amount of work involved in the instant case was minimal and uncontested. Mr. Rice alleges in his petition to the court that he "expended substantial time and effort" on the matter. *See* Mr. Rice's response at p. 3, paragraph 17. However, the application is a simple form which only requires checking a couple of boxes, submitting proof of ID, and filling out the claimant's address. The Debtor's surplus is not being contested by any other owner. Claiming it only involves filing a simple application to receive the funds, which she has already done. Thus, there is a lack of evidence of any substantial time or effort to justify a fee of $24,916.41. There was no intensive research needed regarding the surplus. The matter was a simple one.

5

The *Swierk* court found a fee of 25% unconscionable and the *Crown* court found a fee of 50% unconscionable. Likewise, in the instant case, a fee of 25%, or $24,916.41, to Mr. Rice for a service the Debtor could have obtained on her own for free results in a "gaping cost-price disparity" and is therefore substantively unconscionable. *Crown*, 989 N.E. 2d at 625.

It should also be noted that in the *Swierk* and *Crown* cases, the surpluses were not applied for or located for eight years. Mr. Rice argues that "almost one year elapsed" between the time the surplus was filed with the bankruptcy court and when the Debtor participated in applying for the proceeds. *See* Mr. Rice's response p. 3, paragraph 15. This is incorrect. The Chapter 7 Trustee filed his report of unclaimed funds with this Court on April 5, 2021. *See* Bankruptcy Docket #40. Mr. Rice first contacted the Debtor around early June 2021, so the funds were only sitting with this Court for a mere two months until the Debtor entered into a contract with Mr. Rice. Moreover, the Debtor filed her application with this Court on June 30, 2021. It was not almost a year. It was a mere two months. Moreover, the time it took to discover the surplus is not relevant, as the *Swierk* and *Crown* cases show. Thus, this Court should disregard Mr. Rice's attempt to exaggerate the time window between the funds being claimed with the court and being discovered by Mr. Rice.

### III.  In the alternative, the contract is also invalid under the defense of fraudulent inducement.

In the alternative, if this Court does not find the contract voided based on the defense of unconscionability, then as an alternative theory, the contract should be

invalidated under the defense of fraudulent inducement. In Illinois, fraud in the inducement exists where a contract was procured through misrepresentations or false statements. The elements are: (1) a false statement; (2) of a material fact; (3) which was known or believed to have been false; (4) for the purpose of inducing the plaintiff to act; (5) and the plaintiff's belief and reliance was to her detriment. *Phil Dressler & Assocs., Inc. v. Old Oak Brook Inv. Corp.*, 192 Ill. App. 3d 577, 584, 139 Ill. Dec. 629, 548 N.E.2d 1343, 1347 (1989). All the elements for fraudulent inducement are present in the instant case as follows:

The first element that false statements were made by Mr. Rice to the Debtor is met. The Debtor alleges the false statements made by Mr. Rice to her were: (1) that he was an attorney; (2) that only an attorney could obtain the surplus; and (3) that the Debtor could not obtain the surplus on her own.

The second element is met that these statements were material facts. If the Debtor had not been induced to falsely believe that only an attorney could obtain her surplus and that Mr. Rice was an attorney, she would never have signed the contract. Thus, these false statements were material to the fraudulent inducement.

The third element that Mr. Rice knew or believed the statements he made to be false is met. Mr. Rice is not an attorney. He has not presented any evidence that he is an attorney and has hired an attorney in the present litigation. Also, it is false that only an attorney could obtain the surplus and, as a person working in the locator of funds industry, Mr. Rice should know this. The application Mr. Rice filled

7

Case 10-43794    Doc 61    Filed 08/23/21    Entered 08/23/21 11:17:32    Desc Main
Document      Page 8 of 9

out says on page two in box 2 that one of the potential applicants that can fill out the form is the "owner of record."

The fourth element that Mr. Rice made these false statements to induce the Debtor to act is met. The Debtor alleges that Mr. Rice made these false statements to induce the Debtor to sign a contract with him to pay him 25% of her surplus. Because of his deception, the Debtor was falsely led to believe that only an attorney could obtain the surplus, which could be for no other reason than to induce her to sign the contract.

Lastly, the fifth element that the Debtor's belief and her reliance was to her detriment is met. Based on the Debtor's reliance on Mr. Rice's false statements, she was induced to sign a contract to pay Mr. Rice the unconscionable amount of $24,916.41 for a simple application she could have filed on her own for free. Thus, she suffered a potential detriment of $24,916.41. All elements of fraudulent inducement having been met; this Court should also void out the contract on this contract defense.

Wherefore, the Debtor, Jacqueline Scott, requests that this Court overrule Mr. Rice's objection to her application for her surplus funds, void the contract, and grant such further relief as this Court deems just.

        Respectfully Submitted

        __/s/ Michael Miller____
        Michael A Miller
        The Semrad Law Firm, LLC
        20 S. Clark, 28th Floor
        Chicago, IL 60603
        312-256-8728
        mmiller@semradlaw.com

## CERTIFICATE OF SERVICE

I, Michael Miller, an attorney, hereby certify that on August 23, 2021, I caused a copy of the attached Debtor's Reply to Best Capital Services LLC's/Shawn Rice's Memorandum in Opposition to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the below service list.

        /s/ Michael Miller

Registrants (via CM/ECF)

Attorney for Best Capital Services LLC/Shawn Rice, c/o Aasim Cunningham, Cunningham Lopez LLP,                                    arc@cunninghamlopez.com

Patrick S. Layng, Office of the U.S. Trustee, Region 11
    USTPRegion11.ES.ECF@usdoj.gov

Chapter 7 Trustee, Frank Kokoszka, Kokoszka and Janczur, P.C. 19 South LaSalle Street, Suite 1201, Chicago, IL 60603 fkokoszka@k-jlaw.com

Chapter 7 Trustee, Andrew J. Maxwell, ESQ, Maxwell Law Group LLC, 3010 North California Avenue, Chicago, IL 60618 maxwellchicago@yahoo.com